Filed 6/24/14  An v. Kwon CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALBERT AN et al., | B242530 |
| Plaintiffs, Cross-defendants and Appellants, | (Los Angeles County Super. Ct. No. BC343236) |
| v. | |
| IL YOON KWON et al., | |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Law Offices of Daniel DeSoto and Daniel A. DeSoto for Plaintiffs, Cross-defendants and Appellants.

Lee & Oh, Eric A. Kuzdenyi and Sung H. Lee for Defendants, Cross-complainants and Respondents.

_____

Plaintiffs and appellants challenge a judgment entered after a court trial, in which the court found no fraud was perpetrated on plaintiffs and appellants and that plaintiffs and appellants must repay to defendants and respondents unpaid rent, sums they received as loans, plus interest. The trial court's finding was supported by substantial evidence and we affirm.

## BACKGROUND

### A. The parties and a brief overview of their contentions

Plaintiff and appellant Albert An, M.D. (Dr. An) is a medical doctor whose office was in "the Harvard building." He had financial problems and needed money. In 2000 a friend introduced Dr. An to defendant, respondent and cross-complainant Il Yoon Kwon in hopes Kwon would lend money to Dr. An. Dr. An asked Kwon for money and Kwon offered to lend it. They briefly discussed going into business together or Kwon investing in Dr. An's medical practice, with Kwon becoming a partner in Dr. An's medical practice and supplying funds to operate it. Shortly thereafter, Dr. An told Kwon his parents had advised against going into business with Kwon and Dr. An returned a sum of money Kwon had given him in connection with the plan to go into business.

The parties agree that after this Kwon loaned money to Dr. An. Kwon contends he loaned $845,000 and later invested another sum of about $200,000 with Dr. An. Dr. An concedes Kwon "gave" him approximately $1 million and that Dr. An never paid anything back. Dr. An contends, however, the bulk of the money constituted investments by Kwon in a business with Dr. An.

After lending Dr. An money, Kwon purchased the Harvard building. Kwon holds legal title thereto. Kwon claims he purchased it for himself alone. Dr. An claimed in the operative verified third amended complaint that he and Kwon entered into a partnership whereby Dr. An and Kwon would share equally in the profit gained from a rise in equity in the building and that Kwon had defrauded him of his share of the profits. His version of their alleged agreements changed and became inconsistent during the litigation and trial. After Kwon's purchase of the building, Dr. An paid no rent. Kwon claimed Dr. An owed him over $1 million in unpaid rent in addition to the amounts Kwon had loaned.

2

The fundamental dispute between the parties is (1) whether Kwon defrauded An in connection with a partnership in the building, the medical practice or something else, (2) whether Kwon can recover from Dr. An amounts given to Dr. An as loans, or whether they were nonrefundable investments, (3) whether and to what extent Kwon can recover unpaid rent and prejudgment interest from Dr. An, and (4) whether Kwon can eject Dr. An from the premises.

## B. Procedural history

Fraud is the only cause of action in the operative verified third amended complaint that is at issue in this appeal. Kwon's cross-complaint, also at issue here, seeks unpaid rent, money loaned, interest, and to eject Dr. An from the Harvard building.

A court trial was held from May 3 through May 6, 2010. The parties stipulated that certain deposition testimony, including Dr. An's, would be read by the trial court after May 6, 2010, as part of the trial. They further stipulated that written closing arguments would be submitted by both sides. The parties submitted their written closing arguments to the court on June 9, 2010. Kwon requested a statement of decision. Dr. An stipulated "that if [Dr. An] loses on his claim, that [Kwon] prevail on the ejectment action so we don't have to separately try that claim."

On July 6, 2010, the trial court issued an order stating that, after having considered the evidence and closing arguments, "the Court concurs with the defendant Il Yoon Kwon's counsel's evidentiary analysis of the case." The court ordered defendant's counsel to prepare a proposed statement of decision and a proposed judgment.

Kwon filed a proposed statement of decision and proposed judgment on July 27, 2010. On August 31, 2010, Dr. An filed lengthy objections to the proposed statement of decision, and Kwon later filed an opposition to the objections. The trial court overruled Dr. An's objections and signed the proposed judgment. However, the trial court failed to sign the statement of decision or issue any statement of decision, although the judge had announced that he would.

Dr. An appealed the trial court's failure to sign or issue a statement of decision. We agreed that the trial court was obligated to do so and reversed and remanded with

3

instructions to issue a statement of decision.  (*An v. Kwon* (Mar. 15, 2012, B228918) [nonpub. opn.].)  Thereafter, the trial judge signed the proposed statement of decision and judgment submitted by Kwon before the first appeal.  Dr. An then filed the instant appeal.

## C. The statement of decision signed by the trial court

In the signed statement of decision, the trial court held that all Dr. An's causes of action failed on multiple *independent* grounds.  First, the court found that Dr. An had failed to establish any fraud by Mr. Kwon and that no fraud had occurred.  The court stated:  "Even if Dr. An's claim was not absolutely barred as a matter of law by [the parol evidence rule, the statute of frauds, and another doctrine], he has not proven his claim . . . by a preponderance of the evidence."

Second, the court found as "an independent basis" for its decision that Dr. An's claim was "prohibited by the parol evidence rule."  Similarly, the court held as "an independent basis" for its decision that Dr. An's claim was barred by the statute of frauds and prohibited by certain evidentiary presumptions not at issue here.

The trial court ruled, "Each of Dr. An's claims is denied and judgment shall be entered against him and for Defendants on each claim."  In addition, the court held, "Pursuant to stipulation of the parties made in Court, inasmuch as Dr. An's claims are denied, Cross-complainants are entitled to a judgment of ejectment against Albert An, Laurie An and Woori Medical Center Corp. on their first cause of action on the First Amended Cross-Complaint."

### 1. The trial court found Dr. An had not proved his fraud claim

The statement of decision stated the factual and legal bases of the trial court's conclusion that Dr. An had failed to prove his fraud claim, making the following references to and inferences from the evidence:

"**(a) Dr. An Understood The Agreements He Signed And Had Advice of Counsel**

"Dr. An admits he signed multiple agreements that completely defeat his claim (Exhibits 8, 13, 14 and 28) . . . Dr. An's own testimony refutes any claim of fraud.

4

". . . [I]n trial and his prior deposition, Dr. An candidly admitted that he had legal representation and discussed the agreements with his counsel, including the Assignment of Lease which he admits indicates he is giving all of his interest to Mr. Kwon, and the Lease Amendment and that no one prevented him from reading the Lease Amendment or discussing it with his brother or any other counsel if he wanted to. He admits he is an experienced real estate buyer, having previously purchased both a home and commercial property. He admits these prior deals were in writing and that he has negotiated deals in writing before. He understands that in an ordinary real estate transaction, his name would be on the deed. Dr. An claims his brother (Attorney Kirk An) advised him that the agreement had to be in writing to be enforceable but that he did not ask his brother to write anything because 'there was no time.' Importantly, Dr. An did not produce his brother to confirm Dr. An's claims, or to explain why, in the three years before the lawsuit was filed, there was no time to write a note to Mr. Kwon confirming the alleged ownership.

"Dr. An is not claiming that he did not understand the agreements. In fact, he admits he understood them and had advice of counsel. Where a party has advice of counsel, there is no justifiable reliance and therefore no fraud. [Citation.] Dr. An understood what he was signing and is bound by it.

"**(b) Dr. An's Version Of The Supposed Oral Agreement Has Changed Many Times**

"Dr. An was very vague in trial about the supposed representations by Mr. Kwon and the terms of the supposed agreement. He vacillated between saying they agreed he would be 50% owner of the building and being on title in exchange for the option and the security deposit, to saying he gave 49% of the shares of his medical corporation in exchange for 50% of not only Mr. Kwon's building but all of Mr. Kwon's future business, to saying the agreement with respect to the building was completely separate from the transfer of an interest in the medical corporation, to saying for the first time in trial that the transfer of an interest in the medical corporation was merely a 'token' and

5

'symbolic.' All of these versions contradict one other, and conflict with his bankruptcy testimony that he owned no interest in real estate.

"Dr. An's story changed as he learned more about the legal bars to his recovery. Initially, Dr. An verified not one but two complaints claiming that he had a single agreement to exchange 50% of his medical corporation for 50% of the building and all of Mr. Kwon's future business. He also submitted a signed declaration (Exhibit 105) confirming the claim. . . . He also provided similar explicit testimony in the unlawful detainer case . . . .

"In deposition, Dr. An admitted that he knew transfer of the shares [of a medical corporation to a non-doctor] was illegal." (Fn. omitted.)

"His testimony changed after Mr. Kwon filed a Motion For Judgment On The Pleadings seeking dismissal of the claim on the basis of illegality . . . [making ] an attempt to overcome the Court's previous ruling that the agreement Dr. An claimed in both verified complaints, his declaration, and his [unlawful detainer] testimony is completely unenforceable. Dr. An's change in his story impacts his credibility and alone is enough to refute his claim of false representations by Mr. Kwon.

"**(c) Dr. An Obtained A Discharge From The Bankruptcy Court By Claiming He Had No Real Estate Interest of Any Kind**

"One week after receiving a letter telling him that Coastal Asset Management, LLC, was now collecting rent for the building (Exhibit 35), Dr. An filed for bankruptcy protection. (Exhibits 45-46.) Dr. An had never heard of Coastal Asset Management, LLC, so he had no idea who was collecting rent for property he claims he believed he owned. Obviously, if he believed he owned ½ of the property, he would want to inquire. However, he claims he 'was not paying attention.' This explanation is not credible.

"The very first page of the Summary of Schedules on Dr. An's bankruptcy petition states on the very first line of the summary that Dr. An owns no real estate – '0.00'. (Exhibit 48-1.) The same page totals all of Dr. An's assets in the world at '$82,150.00.' (Exhibit 48-1.)"

6

After discussing Dr. An's various statements to bankruptcy court under oath and subject to criminal prosecution that he owns no real estate or other assets, his noncredible explanation for same, and testimony by Dr. An's wife and bankruptcy attorney contradicting Dr. An's testimony, the court continued:

"The Court finds Dr. An's testimony in this regard is not credible.

"Dr. An seeks to minimize his testimony under oath based on an amended schedule filed *after* this case was already filed and *after* he had already obtained a no-asset discharge in the bankruptcy. (Exhibits 53, 103.)"

In addition, the trial court found, "All of the written agreements, Exhibits 8, 14, 28, reflect Kwon as the sole owner and none support Dr. An's claim that he was to have any interest in the Harvard Building. Dr. An admits he was represented by counsel in the transaction, discussed the agreements with his counsel, and understood that the agreements meant Mr. Kwon was purchasing the building himself alone. He admits he was advised by counsel to get all of the agreements he had in writing for them to be enforceable. Accordingly, the Court finds Dr. An cannot show any reliance on the purported oral agreement that conflicts with the express terms of the written agreements. Further, Dr. An admitted he never had any money to exercise [an option he possessed to purchase the Harvard Building at $3.1 million] and could never have exercised it. Mr. Kwon paid the $3.15 million purchase price himself.

". . . The Court also finds Dr. An's testimony on the alleged oral agreements is untrustworthy and not credible.

"Specifically, the Court finds Dr. An's claim of a contemporaneous oral agreement is not true. Dr. An offered sworn testimony in multiple other proceedings and even previously in this proceeding that directly contradicts his present claim. . . . [¶] . . . [¶]

". . . His testimony is not credible. His claim of an oral agreement was unsupported by any written evidence of any kind. Dr. An also failed to present evidence that would have been important, including the lawyer he consulted and others, and there is no basis to accept his testimony as clear and convincing evidence of anything.

". . . Dr. An has failed to establish any fraud by Mr. Kwon and the Court finds that no such fraud occurred."

"Dr. An's testimony is directly contradicted by third parties including his own bankruptcy attorney, his wife, the broker on the deal, and the seller."

"The Court finds that Dr. An's testimony in general lacked credibility."

"1.  Dr. An knowingly and being fully informed and advised by counsel entered into the written agreements both to transfer his option to Mr. Kwon and to waive any rights he might have in and to the Harvard Building.

"2.  Dr. An failed to meet his burden of proof on the claim of fraud by either a preponderance of the evidence standard or a clear and convincing evidence standard.  Mr. Kwon did not commit fraud."

**2.  The trial court found Kwon was entitled to separately specified amounts of damages for unpaid rent, liability pursuant to a note and guarantee and money loaned, plus interest and other relief pursuant to his cross-complaint**

The trial court made specific findings concerning the amount of unpaid loans, past due rent and interest recoverable pursuant to the cross-complaint.  As noted above, the trial court also found that Kwon was entitled to eject An from the premises pursuant to a stipulation of the parties.

## DISCUSSION

### A.  Applicable law

#### 1.  Standard of review

As Dr. An correctly observes, the standard of review of the trial court's resolution of disputed issues of fact is substantial evidence and, where the rulings depend on resolution of issues of law, the standard is independent appellate review.  (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408.)  Under the substantial evidence standard, the trial court's resolution of disputed issues of fact "will be sustained unless shown to lack substantial evidentiary support.  [Citations.]"  (*Id.* at p. 409.)

8

## 2. Required contents of a statement of decision

In a statement of decision, the trial court must explain "the factual and legal basis for its decision as to each of the principal controverted issues at trial . . . ." (Code Civ. Proc., § 632.) "It is settled that '[i]n rendering a statement of decision under Code of Civil Procedure section 632, a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] Even then, if the judgment is otherwise supported, the omission to make such findings is harmless error unless the evidence is sufficient to sustain a finding in the complaining party's favor which would have the effect of countervailing or destroying other findings. [Citation.] A failure to find on an immaterial issue is not error. [Citations.] The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. [Citation.]' [Citation.]" (*Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745.)

"A 'material' issue of fact is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case. [Citations.]" (*Kuffel v. Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 565.) "A pragmatic limitation on the requirement of findings on subsidiary issues has been imposed as a matter of judicial policy: special findings are not required on every subsidiary matter on which evidence is received at trial, even though the subsidiary matter is relevant to the ultimate issues of fact." (*Ibid.*) The trial court is not required "to make detailed findings of evidentiary facts as to each individual piece of evidence relied upon by the trial court." (*People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119, 128.) "For example, where damages are the product of many interwoven elements, the trial court is not required to make separate findings on each element [citation]." (*Kuffel*, at pp. 565–566.) A judge ordinarily need not explain how he or she calculated damages. (*South Bay Irr. Dist. v. California-American Water Co.*

9

(1976) 61 Cal.App.3d 944, 994 ["Findings of fact relating to the process of a calculation which is the basis of an ultimate fact, ordinarily, are not required."].)

**B. The trial court's finding that there was no fraud is supported by substantial evidence.**

One of the four issues Dr. An raises on appeal is that "[t]he Trial Court's Finding that there Was No Evidence of Any Fraud is Erroneous." Presumably, Dr. An means to say that the trial court was wrong in stating there was "no" evidence because Dr. An's testimony was that a fraud had occurred. Implicit in the challenged finding that there was "no" evidence of fraud is the court's judgment that there was no *credible* evidence of fraud. As the statement of decision makes it clear, the court was fully aware of Dr. An's version of the facts but found Dr. An's testimony lacked credibility and failed to substantiate his claim. Regardless of the court's choice of words, we find the substantial evidence reviewed in the statement of decision amply supported the trial court's finding that no fraud occurred.

**C. This court need not reach the issues of parol evidence or the statute of frauds because no evidence was excluded on those grounds and the statement of decision shows the court considered all of Dr. An's evidence before concluding his claims were unfounded**

A review of the reporter's transcript reveals that no evidence was excluded on the ground of parol evidence or the statute of frauds. The statement of decision makes it clear that the trial court considered Dr. An's version of the facts and that its determination that the parol evidence rule and the statute of frauds barred Dr. An's claims was an entirely "independent" and alternative basis for the court's rejection of Dr. An's claims.

In light of the foregoing, we need not reach the surplus findings as to the parol evidence rule or the statute of frauds.

**D. Dr. An's objections to the written testimony of expert witness Brancazio were waived when Dr. An failed to make a timely objection**

Dr. An argues that the trial court should not have considered the written testimony of an expert certified public accountant (CPA), Jason J. Brancazio, and an exhibit thereto,

10

concerning the amounts due to Kwon and the calculation of interest on those sums. That written testimony was submitted to the trial court on June 9, 2010, purportedly pursuant to a stipulation between the parties. Indeed, the face sheet of the written testimony submitted announced that Kwon was submitting it "pursuant to stipulation of the parties."

At that point, the trial had not ended. Rather, the parties had agreed to submit deposition testimony and other material for the trial court to read in chambers before reaching its decision. The testimony read in chambers was to have the same effect as if it had been read in open court. The court did not rule until July 6, 2010, at which point it issued an order stating that it concurred with Kwon's position. From June 9 to July 6, Dr. An did not make any objection to the admission of Brancazio's written testimony. If an objection had been made, any misunderstandings could have been cleared up before the court considered the evidence. This is one of the reasons for the rule that a party must make a timely objection during trial to preserve his or her right to appellate review. (Evid. Code, § 353, subd. (a).) To be timely, the objection generally must be interposed when the inadmissible evidence is first offered. (See *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 61.) Dr. An's one-month delay in objecting waived the objection and precluded the timely elimination of any misunderstanding.

In addition, Dr. An did not object to Brancazio's testimony when the trial court asked Kwon to prepare a proposed statement of decision and judgment, presumably having relied upon Brancazio's testimony. The proposed statement of decision was submitted to the trial court on July 27, 2010. Dr. An waited until he filed his objections to the proposed statement of decision on August 31, 2010, to object to Brancazio's testimony. This additional failure to object in a timely manner extended the period between submission of the evidence during trial and Dr. An's objection to a period of almost three months (June 9–August 31, 2010). This provides further support for the conclusion that Dr. An waived the objection by failing to make it in a timely manner.

Finally, Dr. An's argument that "there was no testimony of this CPA, and thus it is improper to use this CPA's calculations" is circular. It assumes his conclusion that the written testimony should not have been considered by the trial court.

11

Dr. An has not established that the trial court erred in considering Brancazio's testimony and accompanying calculations to determine the amount of damages and prejudgment interest to award.  The trial court's statement of decision as to damages and interest adequately addresses "the factual and legal basis for its decision as to each of the principal controverted issues at trial . . . ."  (Code Civ. Proc., § 632.)  The court was not required to provide more detailed calculations of the amounts, as such calculations are not ultimate facts and are not necessary to an understanding of the basis of the trial court's  determinations.  (See *Kuffel v. Seaside Oil Co.*, *supra*, 69 Cal.App.3d at pp. 565–566.)

## DISPOSITION

The judgment is affirmed.  Il Yoon Kwon and Coastal Asset Management, LLC, are to recover their costs on appeal.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.